### (115 So. 752)

### No. 28877.

### RED RIVER CONST. CO. v. PIERCE PETROLEUM CORPORATION.

### In re PIERCE PETROLEUM CORPORATION.

### Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. **Statutes ⬅239—Laws in derogation of common right must be strictly construed.**

   Laws in derogation of common right must be strictly construed, and cannot be extended beyond their precise terms.

2. **Highways ⬅113(5)—Statute requiring highway contractor to execute bond for faithful performance of work and payment for materials, etc., must be strictly construed (Act No. 224 of 1918).**

   Act No. 224 of 1918, requiring highway contractor to execute bond for faithful performance of work, with additional obligation for payment by contractor and by all subcontractors for all work and other labor performed or material furnished in construction, erection, alteration, or repair of road, must be strictly construed, and cannot be extended beyond its precise terms.

3. **Highways ⬅113(5)—Liability on bond required of highway contractor must be determined by its provisions, construed with reference to statute exacting it (Act No. 224 of 1918).**

   Bond required of highway contractor is purely statutory, and liability thereon is to be determined by its provisions, construed with reference to Act No. 224 of 1918, which exacted it.

4. **Highways ⬅113(5)—One furnishing oil and gasoline to subcontractor for use in trucks used in hauling and spreading material on roadway cannot recover on highway contractor's bond (Act No. 224 of 1918).**

   One who furnishes oil and gasoline to subcontractor for use in trucks and tractors used in hauling and spreading material on roadway has no right of action on highway contractor's bond or against contractor under provisions of Act No. 224 of 1918, since it was not material used in construction of road, in view of Act No. 203 of 1924, protecting furnisher of feed ·for live stock employed in construction of public works and Act No. 271 of 1926, amending Act No. 224 of 1918, providing that bond executed under act shall contain stipulation for payment of supplies used in machines used in construction of public improvements.·

Overton, J., dissenting.

Suit by the Red River Construction Company against the Pierce Petroleum Corporation. Judgment for plaintiff was affirmed by the Court of Appeal, and defendant applies for writ of review. Rule nisi discharged, and judgment affirmed.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for relator.

Cook & Cook, of Shreveport, for respondent.

J. C. Henriques, Manning W. Heard, and William W. Ogden, all of New Orleans, amici curiæ.

ROGERS, J. The Red River Construction Company was the contractor for the construction of two portions of a highway in Natchitoches parish, designated by the Louisiana highway commission as projects "429–D" and "430–A," and furnished bond in accordance with the terms of Act 224 of 1918. The contractor sublet the work of hauling and spreading gravel on the roadway to C. Nordstrom, who purchased the oil and gasoline for use in his trucks from the Pierce Petroleum Company. The subcontractor failed to pay for the oil and gasoline thus furnished, and the Pierce Petroleum Company made an affidavit and filed it with the recorder of mortgages for the parish, causing the Louisiana highway commission to withhold a final settlement on the contracts. The Red River Construction Company sued the Pierce Petroleum Company for the cancellation of the inscription of its verified account in the mortgage records, on the ground, substantially, that the

materials set forth in the account were not furnished nor used in the construction of the work within the meaning of the statute. The district court gave judgment in favor of the plaintiff company, ordering the cancellation of the inscription on the mortgage records of the account of the defendant company. The Court of Appeal affirmed the judgment, and the case is before us on a writ of review.

The issue presented for determination is whether one who furnishes oil and gasoline to a subcontractor for use in trucks and tractors used in hauling and spreading material on a roadway is given a right of action on the contractor's bond or against the contractor under the provisions of Act 224 of 1918.

Under the statute, the contractor is required to execute a bond for the faithful performance of the work "with an additional obligation for the payment by the contractor and by all subcontractors for all work done, labor performed, or material furnished in the construction, erection, alteration or repair of such * * * road."

It is contended on behalf of the relator that the language of the statute, liberally construed, is broad enough to embrace within its scope materials which, though not forming a constituent or permanent part of the work, are incidental to the execution of the contract. Numerous cases from other jurisdictions are cited in support of the contention. In these cases, however, the statute, contract, and bond interpreted are more extensive in their terms than our legislative act. In general, they cover material furnished "in or about the construction" of the work, "in the prosecution of the work," "in the execution of the contract," or guarantee the payment of all claims against the principal "arising out of the performance" of the contract. Even in the jurisdictions where the doctrine of liberal construction

prevails, we do not find the rule to be as comprehensive as the one the relator would have us apply in construing the language of the statute in the case at bar. Thus, in Standard Oil Co. v. Detroit Fidelity & Surety Co. (Ohio App. 1927) 157 N. E. 418, the issue was presented and determined under a statute reading, "for materials furnished in the construction of the highway." There the court said:

"Proceeding to construe the language in question, and giving the assured the benefit of a liberal construction thereof, we are first met with the proposition whether the gasoline and oil actually and physically enter into the composition of what is known as the construction of the highway improvement. Is the gasoline or oil an element or ingredient of the improvement? Are they elements of material, physically connected with the formation of the structure constituting the public improvement? The answer necessarily is in the negative. A disintegration of the elements composing the improvement would not reveal the presence of gasoline or oil, and consequently the gasoline and oil do not enter into the construction of the improvement, because they form no part thereof."

In the case of Pierce Oil Co. v. Parker, 168 Ark. 400, 271 S. W. 24, which was also a suit for oil and gasoline furnished a contractor under a statute somewhat broader in its terms, the court used the following language, viz.:

"Coal and oil while used as fuel for portable engines and machinery used in construction work, are merely an incident in the operation of the machinery, and partake of the same characteristic as it does. In other words, they are at least one step further removed from the actual work of construction, and do not have any immediate connection with the structure at any time. * * * Courts must stop somewhere in the construction of these statutes. Otherwise repairs on the machinery used in the construction of the improvement, and the diminished value of the machinery and tools used in such construction, will be deemed to be lienable claims. If matters which are only remotely connected with the construction of the public improvement should be held to be lienable, the protection of the bond to the class intended by the statute would be greatly impaired. To the same effect, see City of Alpena v. Title

Guaranty & Surety Co., 158 Mich. 678, 123 N. W. 1126, City of Philadelphia v. Malone, 214 Pa. 90, 63 A. 539, and S. B. Luttrell & Co. v. Knoxville L. & J. R. Co., 119 Tenn. 492, 105 S. W. 565."

In the case of Gary Hay & Grain Co. v. F. & D. Co. (Mont. 1927) 255 P. 722, involving a statute similar to the one under consideration here, the court refused to hold the surety liable for oil and gasoline. The court had occasion to distinguish between the terms "materials" and "supplies" and defined material to be "the substance matter of which a thing is made." It said, quoting from ample authority, that:

"Following these definitions, the general rule is that, when the bond mentions only material, the surety is liable only for the payment of that which has gone into and becomes a part of the completed work."

To the same effect, see Yarger v. Dakota Trust Co. (N. D.) 215 N. W. 209; Sou. Surety Co. v. Simon, 172 Ark. 924, 290 S. W. 960; Shultz v. Quereau Co., 210 N. Y. 257, 104 N. E. 621, L. R. A. 1915E, 986, Ann. Cas. 1915B, 965.

[1, 2] In this state laws in derogation of common right must be strictly construed and cannot be extended beyond their precise terms. Of this character are statutes of the kind under consideration here—statutes which are designed to hold the public authority having the work done responsible, under certain circumstances, for the debts of the contractor, and to hold the contractor responsible for the debts of the subcontractors, and to substitute the bond required for the security which is otherwise granted a claimant under their provisions.

[3, 4] The bond in question is purely statutory, and the liability thereon is to be determined by its provisions construed with reference to the statute which exacted it. It binds the surety company to pay those persons who furnished labor or material in the construction of the portions of the road referred to in the contract. We do not think the contractor or his surety on such a bond is liable for material furnished the subcontractor which was not used in the improvement. There is no connection between the oil and gasoline furnished by the defendant Pierce Petroleum Corporation to the subcontractor and the ingredients composing the road. It cannot be said, therefore, that the lawmaker, in the unequivocal language used in the statute, intended that the substances used to lubricate and operate trucks employed to transport the material placed upon the road were, in fact, materials that actually entered into the construction of the improvement. If such was the legislative intention, it is not unreasonable to conclude that words unmistakably evidencing the intention would have been used. The correctness of this interpretation of the statute is emphasized by subsequent legislation; Act 203 of 1924, protecting the furnisher of feed for mules and other livestock employed in the construction, alteration, and repair of public works of any character, and Act 271 of 1926, amending Act 224 of 1918, providing that the bond exacted under the latter act shall also contain a stipulation for the payment of "all material or supplies furnished for use in machines used in the construction, erection, alteration or repair" of the public improvement.

For the reasons assigned, the rule nisi herein granted is discharged, and the judgment of the Court of Appeals is affirmed, at the cost of the relator.

OVERTON, J., dissents.