No. 3297

**Second Circuit**

———

NELSON ET AL. v. CONTINENTAL
ASPHALT & PETROLEUM CO. ET AL.

———

(July 1, 1929. Opinion and Decree.)
(October 1, 1929. Rehearing Refused.)

———

Foster, Looney and Wilkinson, of Shreveport, attorneys for plaintiffs, appellees.

E. W. & P. M. Browne, of Shreveport, attorneys for defendants, appellants.

ODOM, J. In July, 1919, plaintiffs executed an oil and gas lease on certain lands in Red River parish to one Ramsey, who subsequently transferred the lease to the defendant Continental Asphalt & Petroleum Company, which company drilled for oil and was successful.

Under stipulations contained in the lease, the lessors were to receive as royalties one-eighth of the oil saved from wells which produced 200 barrels or less per day, and one-sixth of the oil from wells which produced more than 200 barrels per day; and, in addition to the above royalties, the lessee obligated itself "to pay an additional sum equal to $50.00 per acre out of one-fourth of the first oil saved from that produced."

The land leased was "estimated" in the contract to contain 75 acres. It is admitted that there was produced and saved from the wells on the land oil amounting in value to $80,000, but the additional sum equal to $50 per acre was never paid.

The present suit was brought by the lessors to collect $3,750, or $50 per acre, for 75 acres.

Subsequent to the date on which the lease was entered into, the lessors and the lessee entered into an agreement to the effect that the lessee should execute bond to secure payment due under the last-named clause, and the Fidelity & Casualty Company of New York became surety on the bond, which surety company was joined in this suit as co-defendant with the principal. The suit was filed on June 20, 1921, and on October 5th, following, the casualty company, surety on the bond, filed an exception to the jurisdiction of the court ratione personae, which exception was submitted on April 3, 1922, and on May 3d was overruled by the court. Three days later, on May 6th, the casualty company moved for a new trial of its exception to the jurisdiction, setting up that this exception was not based upon the ground that the principal and surety can not be joined as defendants in the same suit, "but, on the ground that the surety cannot be brought into court where the court has no legal jurisdiction over the principal and that in the case at bar plaintiff has not alleged facts giving this court jurisdiction herein, and that appearer, alleged to be a surety on the bond sued on, has a legal right to raise in its own behalf the question of the jurisdiction as the same might apply to the principal."

On October 21st following, the motion for a rehearing on exception to the jurisdiction was denied.

The principal defendant, Continental Asphalt & Petroleum Company, did not except to the jurisdiction of the court. The case as to it was defaulted on April 5th. Three days later, on April 8th, it moved to set the default aside on the ground "that no valid service of the petition and citation has been made on exceptor herein. That at the time said preliminary default was entered, a plea to the jurisdiction of this Honorable Court had been filed herein by the Fidelity & Casualty Company of New York, its co-defendant herein, and that as said plea tendered the whole issue of jurisdiction herein, no valid default could be entered in this case pending said plea." On November 10th following, the exception to the citation and the

motion to set the default aside were overruled.

On November 4, 1922, the Fidelity & Casualty Company, surety on the bond, with reservations of all its exceptions and prior pleas, filed answer, and on November 29th, the principal defendant also filed answer, and on the same day filed a supplemental answer. On trial of the case, there was judgment for plaintiffs as prayed for against both defendants in solido for the sum of $3,750, and both defendants appealed.

## OPINION

Both defendants were represented all through by the same attorneys, and, while they do not say so in argument or in brief, we infer that the appeal, insofar as the principal defendant, Continental Asphalt & Petroleum Company, is concerned, is practically abandoned. Counsel for appellee state in brief that no appeal was taken by it, but the record discloses that it did appeal devolutively and perfected its appeal by giving bond. But whether its appeal has been abandoned or not is unimportant, and we shall pass upon its case along with that of its co-defendant, the casualty company.

The serious contention made by counsel for appellants is that the district court of Caddo parish was without jurisdiction. But, as already stated, the principal defendant, Continental Asphalt & Petroleum Company, did not except to the jurisdiction but permitted the case to be defaulted as to it, and counsel concede that, having permitted issue to be joined tacitly by default, it could not thereafter raise the question of jurisdiction. It did, however, move to set aside the default on the grounds, first, that the citation was illegal; and, second, because at the time the default against it was entered, there was pending an exception to the jurisdiction filed by the casualty company, sued in solido with it.

As to the citation, we have no means of knowing whether it was legal or not. The citation itself is not in the record, and there is nothing to show upon whom or how service was made. The motion to set the default aside on the ground that the citation was not legal was heard by the district judge, and presumably there was introduced testimony on the point, but the testimony is not in the record. We must assume that there was sufficient testimony introduced to warrant the district judge in holding that the citation was legal. This court will not reverse the judgment of a trial judge without evidence disclosing error, but will presume that he had before him sufficient facts to warrant his ruling. And, in this connection, we state that neither the exception to the citation nor the record otherwise disclose the grounds on which counsel contended that the citation was illegal. Plaintiff alleged in the petition that the defendant "Continental Asphalt & Petroleum Company is a corporation organized under the laws of ———— state, and doing business in Caddo Parish." From the argument of counsel on both sides, we gather that the petroleum company is a foreign corporation. Even so, it was suable in Caddo parish even though it was drilling for oil in the parish of Red River, if it had its domicile in Caddo parish, or if it had located in that parish a main office which had supervision of all its affairs in the state. Subsection (f), sec. 6, Act No. 179 of 1918; Abadie et al. vs. National Petroleum Corporation, 150 La. 1076, 91 So. 516.

Counsel for appellants concede that, but, in supplemental brief, say that it was

neither alleged or proved that the petroleum company had an office in Caddo parish having supervision of the transaction out of which this cause of action arose, or that it was domiciled in that parish. It was not alleged that it had its domicile in the parish of Caddo, but it was alleged that it was "doing business in Caddo parish." That allegation is broad enough to admit proof that it had its main office in that parish, and it must be assumed that the district judge heard evidence on this point, and that the testimony convinced him that the defendant was properly before his court, and, as stated, we will not disturb his ruling in the absence of testimony disclosing error.

The Continental Asphalt & Petroleum Company, being suable in Caddo parish, it follows that the casualty company, surety on the bond, was suable there also, because section 8, Act No. 41 of 1894, provides that "such Company shall be suable in the same jurisdiction as the principal obligee (obligor) on such bond, and citation shall be served on it, or its attorney for service of process, as is by law in such cases provided." It is not contended that service on the casualty company was not properly made.

But there is another reason why these defendants cannot escape this litigation brought in Caddo parish. As already stated, the principal defendant did not except to the jurisdiction, but permitted default to be entered against it, and it is conceded that, as it was present in this state and engaged in business here, it could not thereafter plead to the jurisdiction. It urges, however, that, inasmuch as the casualty company had filed a plea to the jurisdiction, no default could be legally entered against it while the casualty company's exception to the jurisdiction was

pending. We have been referred to no rule or law, and we know of none, to prevent a default being entered against a principal defendant because there was pending an exception filed by the surety company.

But, aside from this, the principal defendant filed answer, and in the answer tendered to plaintiff the sum of $2,182.50 admitted to be due. By doing so, it submitted itself to the jurisdiction of the court. The court then and there could have entered judgment against it for that amount. Fitzpatrick-Cromwell Co., Limited, vs. Ellis, Judge, 106 La. 715, 31 So. 313, and authorities there cited.

The casualty company, surety, also filed answer in which it alleged that "said Continental Asphalt & Petroleum Company has tendered or offered to pay plaintiffs the sum of $2,182.50, which said plaintiffs have refused"; and it prayed that "there be judgment in favor of defendants and against said plaintiffs rejecting their demands in excess of said sum of $2,182.50, and for full and general relief."

These allegations are equivalent to a tender by the casualty company as it adopted the allegations with reference to the tender which were made by the principal defendant, and sought to take advantage of said tender. It was so regarded by the Supreme Court when it transferred the appeal to this court. It said:

"* * * The Fidelity & Casualty Company of New York also filed an answer to the suit, adopting the answer filed by the Continental Asphalt & Petroleum Company, except insofar as the answer adopted is inconsistent with the one filed by it. There is nothing in the answer filed by the surety company that is inconsistent with the answer adopted by it insofar as relates to the amount admitted in the answer adopted as due. To the contrary, the surety company expressly prays that

plaintiff's demand be rejected, except as to the amount admitted to be due, which exception necessarily refers to the $2,182.50 admitted by the Continental Asphalt & Petroleum Company as being due, since nowhere else in the answer of either of the defendants is any other amount admitted to be owing. Therefore, when the suit was filed, there was $3,750, exclusive of interest, apparently in contest. However, prior to the submission of the case in the trial court for decision, the amount in contest was reduced, by the admissions made in the answers, to $1,567.50, exclusive of interest." Nelson vs. Cont. Asphalt & Pet. Co. et al., 157 La. 491, 102 So. 583.

The casualty company therefore subjected itself to the jurisdiction of the court.

### ON THE MERITS

It is contended by these defendants that the tract of land leased did not contain in fact 75 acres, and that it should have refunded to it approximately $1,000, being $100 per acre on the difference in acreage between that estimated in the lease and the acreage actually covered by the lease; and further contended that, if the court should hold that defendants are liable for any amount, such amount should be based upon the actual acreage and not that stipulated in the lease.

It is contended in argument that the lease covered only sixty-four and a fraction acres, and it is suggested that the land was carefully surveyed and measured, which survey and measurement disclose that the tract contained only about 64 acres. But we fail to find in the record the plat or survey referred to, for which reason we have no means of ascertaining the acreage, except by reference to the testimony of the plaintiffs. They both testified that, at the time the lease was granted, there were 75 acres in the tract, if not more, and there is nothing in the record to the contrary. The testimony dis-

closes that a portion of the land is located on the bank of Red River, which is caving very rapidly, and it is probably true that the tract was reduced in acreage by the caving. But, as stated, the only testimony in the record with reference to the acreage shows that, at the time the lease was made, there were fully 75 acres in the tract, as estimated at the time the lease was entered into. We think the judgment on the merits is correct.

For the reasons assigned, the judgment appealed from is affirmed, with costs in both courts.